## Talley v. Commonwealth.

(Decided May 8, 1934.)

O. R. BRIGHT for appellant.

BAILEY P. WOOTTON, Attorney General, DAVID C. WALLS, Assistant Attorney General, J. D. HUMPHREY, B. S. GRANNIS and M. HARGETT for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Joe Talley, Preston Miller, and Reynolds Bishop, were jointly indicted at the May, 1933, term of the Fleming circuit court for the crime of breaking and entering into a storehouse of another and stealing and carrying away therefrom, $27.95 in money and eighteen cartons of cigarettes and some pipes. They were tried at the same term of court, convicted and sentenced to two years in the penitentiary. Talley appeals.

Jesse Hickerson, a youth 17 years of age, claims that he was with the defendants and participated in the offense charged. There were no other eyewitnesses to the offense and the testimony of the accomplice, Hicker-

son, constitutes the principal part of· the evidence for the commonwealth.

The only ground urged for reversal on this appeal is that the testimony of the accomplice, Hickerson, was not sufficiently substantiated or corroborated by other evidence to warrant a conviction under the well-known rule (section 241, Criminal Code of Practice) that a conviction cannot be had upon the evidence of an accomplice unless such evidence be substantiated by other evidence tending to connect the defendant with the com-. mission of the offense.

·Hickerson, the accomplice, testified that on March 6, 1933, he walked from his home a few miles out of Flemingsburg, arriving in town about noon; that he worked for a colored man that afternoon who paid him 20 cents and gave him some food. He loafed around town a while and spent considerable time in the Armstrong pool room (the place broken into); that he saw appellant, Joe Talley, and Bishop and Miller, his co-defendants, in the pool room. They remained in the pool room until it closed about 10 o'clock and then went out on the street to Wilt's corner, and sat there a few minutes, and Talley stepped to the next storeroom and tried a key on the door; he then crossed the street to Lerman's and tried a key on Lerman's door; thence to Clinkerbeard's store and there tried a key on his door; thence to Kroger's store and tried the key on that door. They next went to a blacksmith's shop and opened it with the key and entered the shop but found nothing. They then returned by the way of an oil station and went up the rear of the stockyard lot, looking for liquor but found none. They then returned to the oil station and soon a car came up and stopped. Hickerson did not go to the car but Talley went to it and both occupants of the car, Bishop and Miller, got out and Talley told Hickerson to come on. Bishop and Miller had a suitcase and hand bag. He said that one was a square grip or suitcase and the hand bag was black. All four of them went together to the Armstrong pool room and Talley told Hickerson to stand guard, which he did, and the three defendants went down the alley to the rear of the store and broke out a window and entered it. They came out the front door with the two grips and they all four went together back to the car where Miller opened one of the grips and gave Hickerson two cartons of cigarettes, $5 in money, and two pipes. Hickerson then

went home arriving there between 4 and 5 o'clock and put his cigarettes in two one-half gallon jars and his $5 in another jar and went out and hid them in the ground. Hickerson was suspected, and, when arrested, he had two packages of cigarettes of the same brand and make that were taken from the store. He first denied that he was connected with the offense or had any knowledge thereof and attempted to explain the cigarettes by stating that he purchased them at another store in Flemingsburg, but when asked to go with the officers and identify the clerk from whom he bought them, he then changed his story and implicated defendants as above related.

Motye Vize testified that she had company on the night the store was broken into and did not retire until a late hour. After she retired, she heard a car come up near the house and stop with the motor running. This attracted her attention and she looked out the window and saw the car and three men and recognized Joe Talley but did not know the other two; that they had a suitcase with them and described it as being "just an ordinary square suitcase," and they put the suitcase in the rumble seat of the car. Two of the men walked down the street and the other got in another car and drove off. She stated that one man was smaller than the others and the small one went down the street toward the Christian Church. It is shown that Hickerson was smaller than the other men. Miss Vize's description of the suitcase and other occurrences there corroborates the accomplice witness, Hickerson.

The appellant admitted that he was in the pool room in company with Hickerson when the pool room was closed on that night and admitted going to Wilt's corner, as testified by Hickerson. He also admitted putting his key in Lerman's door, but denied that he attempted to open Dudley's door, but admitted that he opened the screen door. But he said he had no intention of going into the buildings. He further admitted going toward the blacksmith shop, but says that he did not go all the way to the shop. He further admitted passing the Kroger store and said he looked at the door and saw that it had two locks on it, but denied attempting to unlock it. When asked on cross-examination why he was trying his keys on these doors and observing the locks, the only explanation he offered was "just curiosity." He was asked:

"Q. When you turned the lock what did you expect to do next? A. I wouldn't exactly say, I wouldn't have gone in though. Q. Why did you happen to be scrutinizing that lock? A. I think anybody would have the right to look as you have. Q. Then why were you looking at the locks on that door? A. Well, I couldn't say, I don't know."

He admitted that he was drunk or considerably intoxicated on that night, and, when asked if he was "a little bit hazy about what was happening," he answered, "I don't know." He admitted being at practically all the places testified to by Hickerson, but attempted to explain it by saying that they were hunting for whisky. He admitted being with his co-defendants at the car and that they had the suitcase and grip described by Hickerson, and offered as an explanation that they were moving their rooming and boarding house and were carrying their clothes in a suitcase. By his evidence he admits practically the whole story as related by Hickerson except breaking into the store and taking the property therefrom.

In Harper v. Commonwealth, 211 Ky. 346, 277 S. W. 457, two accomplice witnesses, Brady and Puckett, implicated Harper. The evidence of the accomplices was, in substance, that they and Harper agreed to break into a store and steal the money which was in a safe and, on that night while the store was still open, they went to the place, part of them going into the store and the others remaining on the outside as watchmen, presumably for the purpose of getting a knowledge of the situation preliminary to carrying out their plans. The store was closed for the night at about 10:30 or 11 o'clock p. m. and between that time and 2 a. m. it was entered, the safe removed and carried a few miles out in the country and broken into and the contents taken therefrom. Harper denied any connection with the offense. The accomplice witnesses were corroborated by the evidence of another witness who stated, in substance, that on the night in question he had gone to a house in the locality of the storeroom broken into, to visit a sick friend, and that, upon leaving that place at 12:30 or 12:45 a. m. in returning to his home, he passed by the store and saw four men standing in an alley running alongside the storehouse near the side door where the two accomplices said the safe was taken out. He identified Harper as one of those four men. It was held in

that case that the evidence of Hudson sufficiently corroborated the accomplices to warrant a conviction.

The corroborative evidence in the case at bar is stronger than in the Harper Case. Appellant's testimony within itself sufficiently corroborates the accomplice, and, in addition to his own admissions, we have the evidence of Miss Vize as above stated, which also strongly corroborates the accomplice respecting the grips and hand bag, and the maneuvers of the parties at that place, practically as detailed by the accomplice.

It is our conclusion that there was sufficient corroborative evidence to warrant a submission of the case to the jury and to support its finding.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.